**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **OPEN RANGE CAPITAL FUND 1 LLC,**<br><br>Plaintiff,<br>v.<br><br>**BRANDON SCHWAB,**<br>**SHEPHERD CAPITAL LLC, and**<br>**SHEPHERD CAPITAL WI LLC,**<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 1:25-CV-13898<br><br>Jury Trial Demanded |

**COMPLAINT**

COMES NOW, Plaintiff Open Range Capital Fund 1 LLC ("Plaintiff") by and through its undersigned counsel, and for its Complaint against Defendants Brandon Schwab ("Schwab"), Shepherd Capital LLC d/b/a Shepherd Premier Senior Living ("SC"), and Shepherd Capital WI LLC ("SCWI") (collectively the "Defendants"), states as follows:

**INTRODUCTION**

1. Defendants's conduct, as alleged herein, constitutes breaches of promissory notes, fraudulent and negligent misrepresentations, and various violations of Illinois and Federal law, including violations of Sections 5, 12, and 15 of the Securities Act of 1933 [15 U.S.C. §§ 77e(a), 77e(c), 77l, and 77o], Section 10b [15 U.S.C. § 78j(b), Rule 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)] of the Securities Exchange Act of 1934, 815 ILCS 505/1, ch. 121 1/2, par. 137.5, and Section 2a, of the Illinois Securities Law of 1953. Plaintiff also seeks a judicial dissolution of Defendant SCWI.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 to the extent this action arises under the Constitution, laws, or treaties of the United States.

3. This Court has jurisdiction over this proceeding pursuant to Section 4A(c) of the Securities Act of 1933 [15 U.S.C. § 78aa].

4. Venue is proper in the North District of Illinois pursuant to Section 22 of the Securities Act of 1933 [15 U.S.C. § 78aa] and 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims made herein occurred in the Northern District of Illinois. Additionally, all Defendants reside, transact business, and operate their principal place of business within this district.

5. All conditions precedent to this action have been performed, satisfied, or waived.

**THE PARTIES**

6. Plaintiff is a Wyoming Limited Liability Company, with its principal place of business in Wyoming.

7. Defendant Schwab is, and was at all times relevant, an individual over the age of 18, *sui juris*, and a citizen of Illinois.

8. Upon information and belief, Defendant SC is, and was at all times relevant, an Illinois Limited Liability Company, with its principal place of business in Illinois.

9. Upon information and belief, Defendant SCWI is, and was at all times relevant, an Illinois Limited Liability Company, with its principal place of business in Illinois.

10. At all times relevant, Plaintiff was represented by Alex Schloe ("Schloe"), Charles Cameron ("Cameron") and Luke Frizzell ("Frizzell")(collectively "Plaintiff Reps").

**STATEMENT OF FACTS**

11. Defendant Schwab advertises himself as operating a Boutique Senior Living Fund on his website, boutiqueseniorlivingfund.com, and regularly appears and speaks on podcasts regarding his senior living funds.

12. Defendant Schwab is the principal agent of and investor in Defendant SC and Defendant SCWI.

13. On or about May 2024, Plaintiff Reps contacted Defendant Schwab to speak regarding investments in senior living homes, including projects located in Cottage Grove, Wisconsin, and Elkhorn, Wisconsin (collectively, "Projects").

14. These Projects were to be owned and/or managed by Defendants.

15. From the onset, Defendant Schwab made material misrepresentations and was otherwise not transparent with his operations of and management of the Projects.

16. Upon information and belief, the Defendants entered into joint ventures to market and sell unregistered securities.

17. The Defendants are currently holding numerous unregistered securities in the name of the various Defendants.

18. Defendant Schwab offered and sold unregistered securities held in the names of the Defendant SCWI and/or Defendant SC.

19. None of the Defendants are currently registered or have ever registered as broker-dealers with the SEC.

20. Upon information and belief, none of the Defendants have ever registered their proffered securities with the SEC.

21. None of the proffered securities are exempt from registration under 15 U.S.C. § 77r(b).

22. None of the Defendants are currently registered or have ever registered as a broker-dealer with the State of Illinois.

23. None of the Defendants have ever registered their proffered securities with the State of Illinois.

**A. Cottage Grove Project.**

24. Upon information and belief, Defendants began raising capital with respect to the existing assisted living and memory care facilities located at 325 W. Cottage Grove Rd, Cottage Grove Wisconsin, 53527 and 505 Westlawn Rd, Cottage Grove, Wisconsin, 53527 ("Cottage Grove Project").

25. On or about June 6, 2024, Defendant Schwab presented Plaintiff Reps with an informational presentation whereby Defendant Schwab offered Plaintiff Ten Percent (10%) equity in Defendant SCWI's Cottage Grove Project.

26. Plaintiff was told that the capital raised by Plaintiff was to be used for an extensive rehab of the existing assisted living and memory care facilities located at 325 W. Cottage Grove Rd, Cottage Grove Wisconsin, 53527 and 505 Westlawn Rd, Cottage Grove, Wisconsin, 53527.

27. During this presentation Defendants represented that the current value of the Cottage Grove 15 bed assisted living unit was $2.5M with a stabilized value of $5.1M; that the average resident count was 13.5; average revenue per bed was $7,219/mo; average cost of goods sold was $4,812/mo; average profit margin at 90% occupancy was $33,467/mo; that it was purchased in December 2023 for $1.5M, and that the expected rehab for the property was $100,000.

28. During this presentation, Defendants represented that the current value of the Cottage Grove 20 bed memory care was $2.5M with a stabilized value of $6.7M; that the average resident count was 18; average revenue per bed was $7,219/mo; average cost of goods sold was

$4,812/mo; average profit margin at 90% occupancy was $44,622/mo; that it was purchased in December 2023 for $1.5M, and that the expected rehab for the property was $100,000.

29. Following the presentation, Defendant Schwab urged Plaintiff to contact Defendant Schwab to make its investment promptly, so that it did not miss the opportunity to invest.

30. Plaintiff performed due diligence on the Cottage Grove Project, including reviewing the material, including financials, provided by Defendants related to the Cottage Grove Project.

31. Prior to Plaintiff's investments, Defendants made the following additional representations:

a. On June 10, 2024, via email, Defendants represented to Plaintiff that Cottage Grove would be purchased by Defendants, that Plaintiff would be paid 10% interest on a promissory note, and that Plaintiff would receive 10% of the profits realized.

b. In this email, Defendants stated that the monthly income at purchase of the two facilities was $30,000 per home/$60,000 total and that as of June 1, 2024, the income grew to $70,000 per home /$140,000 total; that there was a 30% profit margin.

c. On June 24, 2024, Defendants represented that they "got [annual cash flow] up to $126,000".

d. On July 1, 2024, Defendants provided a Profit and Loss Statement from January 1, 2024 to July 1, 2024 revealing a net income of $109,561.15 for the Cottage Grove Property.

e. At all times relevant, Defendant misrepresented that Plaintiff's investment would be used soley to rehabilitate the Cottage Grove facilities.

f. At all times relevant, Defendant misrepresented to Plaintiff that it would act in a manner to ensure profitability of the investments.

32. Based upon Defendants' representations, Plaintiff contacted Defendant Schwab and expressed interest in investing and further communicated through e-mail following many conversations.

33. Defendant Schwab communicated basic investment details to Plaintiff and indicated that upon investment, the properties would be refinanced using "take out financing" and return the capital of Plaintiff's investments.

34. Plaintiff proceeded with transferring Four Hundred Thousand ($400,000) Dollars to Defendants for its investment in the Defendants' Cottage Grove Project.

35. In particular, on or about June 21, 2024, Defendants sent Plaintiff an email that attached an operating agreement, wire instructions, and a promissory note.

36. Defendant Schwab stated that to "secure the deal, you guys will send $50,000 from your account immediately and then raise the remaining $350,000 within 2-3 weeks."

37. On or about June 25, 2024, Plaintiff wired Defendants $50,000 to secure the deal.

38. On or about August 5, 2024, Plaintiff and Defendant SCWI entered into a promissory note for the principal amount of $400,000, plus interest. *A true and accurate copy of the Cottage Grove Promissory Note is attached as* **Exhibit A** *and incorporated by reference herein*.

39. Plaintiff thereafter wired Defendants the remaining $350,000 in separate installments on August 9, August 15, August 23, and August 29, 2024.

40. In exchange for Plaintiff's Four Hundred Thousand ($400,000) Dollar contribution for the Cottage Grove Project, Defendants agreed to pay Plaintiff its initial capital contributed into

the Cottage Grove Project with simple interest at Ten Percent (10%) due quarterly in equal quarterly installment payments due to Plaintiff.

41. Defendant Schwab was the guarantor of the Cottage Grove Promissory Note.

42. Pursuant to the Cottage Grove Promissory Note, beginning in October of 2024, Defendants were to pay Plaintiff approximately Ten Thousand Dollars ($10,000.00), quarterly, through August of 2029.

43. The parties later memorialized Plaintiff's investment in the Cottage Grove Project via an "Operating Agreement" dated August 7, 2024, with and effective date of February 1, 2024. by and between Defendant SCWI and Plaintiff ("Cottage Grove Agreement"). *A true and complete copy of the Cottage Grove Operating Agreement is attached hereto as* **Exhibit B** *and incorporated by reference herein.*

44. Notably, Plaintiff had yet to even speak or meet Defendants as of February 1, 2024.

45. Based on the Cottage Grove Agreement, Plaintiff was to receive a Ten (10%) Percent equity in Defendant SCWI.

46. Defendants did not own the Cottage Grove assisted living facility located at 325 W. Cottage Grove Rd, Cottage Grove Wisconsin, 53527 or the Cottage Grove memory care facility located at 505 Westlawn Rd, Cottage Grove, Wisconsin, 53527, but rather Defendants had only an *option* to purchase the property from the property owner.

47. Thus, Defendants' representation that they purchased the Cottage Grove facilities in December 2023 for $1.5M was untrue.

48. Unbeknownst to Plaintiff, Defendants did not have a valid license to operate the Cottage Grove facility and was therefore unable to collect any of the amounts due from the residents.

49. Instead, the property owner owned the operational license for the facility.

50. Based on Defendants' representations, the owner refused to turn over the income generated by the residents even though Defendants were purportedly managing the facilities.

51. Plaintiff relied upon Defendant Schwab's representations that Defendants operated the assisted living facility located at 325 W. Cottage Grove Rd, Cottage Grove Wisconsin, 53527 or the Cottage Grove memory care facility located at 505 Westlawn Rd, Cottage Grove, Wisconsin, 53527 when making its contribution into the Cottage Grove Project.

52. In a December 30, 2024, update, Defendants learned that instead of the previously represented census count of approximately 13.5 residents per 15 assisted living beds, there were only 6 residents; and instead of 18 residents per 20 memory care beds, there were only 5 residents.

53. On December 30, 2024, Defendants provided 2024 Profit and Loss Statement which revealed a net operating income of $-112,848.50 for 2024 – a $222,409.65 negative swing from the previously represented amount of $109,561.15.

**B. Elkhorn Project.**

54. Upon information and belief, Defendants began raising capital with respect to the existing assisted living and memory care facility located at 450 E. Geneva Street, Elkhorn, Wisconsin, 53121 ("Elkhorn Project").

55. On or about June 6, 2024, Defendant Schwab presented Plaintiff Reps with an informational presentation whereby Defendants offered Plaintiff Ten Percent (10%) equity in Defendants' Elkhorn Project.

56. Plaintiff was told that the capital raised by Plaintiff was to be used for an extensive rehab for the Elkhorn Project.

57. During this presentation, Defendants represented that the current value of the Elkhorn 20-bed assisted living unit was $2.3M with a stabilized value of $4.7M; that the average resident count was 16.3; average revenue per bed was $4,018/mo; average cost of goods sold was $2,822/mo; average profit margin at 90% occupancy was $34,970/mo; that it was purchased in December 2023 for $1.5M; and that the expected rehab for the property was $100,000.

58. Following the presentation, Defendant Schwab urged Plaintiff to contact Defendant Schwab to make its investment promptly, so that it did not miss the opportunity to invest.

59. Plaintiff performed due diligence on the Project, including reviewing the material, including financials, provided by Defendants related to the Elkhorn Project.

60. Prior to Plaintiff's investments, Defendants made the following additional representations:

a. On or about June 24, 2024, Defendant represented that Elkhorn property generated $73,000 in income per month, and that it generated $20-22K per month in profit.

b. On July 3, 2024, via email, Defendants represented that they paid $1.5 million for the property, that there was a lease purchase five year term at $10,000 per month, current profits of "$10-12K per month right now", expected profits of 20-30K per month, 19 out of 20 residents, mostly public pay averaging $4,000 per month with an expected increase to $100,000 per month with private pay residents.

c. On July 1, 2024, Defendants provided a Profit and Loss Statement from January 1, 2024 to July 1, 2024 revealing a net income of $136,957.19.

d. At all times relevant, Defendant misrepresented that Plaintiff's investment would be used solely to rehabilitate the Elkhorn facility.

61. Based upon Defendants' representations, Plaintiff contacted Defendant Schwab and expressed interest in investing and further communicated through e-mail following many conversations.

62. Defendant Schwab communicated basic investment details to Plaintiff and indicated that upon investment, the properties would be refinanced using "take out financing" and return the capital of Plaintiff's investments.

63. Plaintiff proceeded with transferring Three Hundred Thousand ($300,000) Dollars to Defendants for their investment in the Defendants' Elkhorn Project.

64. In particular, on or about August 9, 2024, Plaintiff and Defendant SCWI entered into a promissory note for the principal amount of $300,000, plus interest. *A true and accurate copy of the Elkhorn Promissory Note is attached as* **Exhibit C** *and incorporated by reference herein*.

65. Plaintiff thereafter wired Defendants the $300,000 in separate installments on August 22 and August 26, 2024.

66. In exchange for Plaintiff's Three Hundred Thousand ($300,000) Dollar contribution into the Elkhorn Project, Defendants agreed to pay to Plaintiff its initial capital contributed into the Elkhorn Project with simple interest at Ten Percent (10%) due quarterly in equal quarterly installment payments due to Plaintiff.

67. Pursuant to the Elkhorn Promissory Note, beginning in October of 2024, Defendants were to pay to Plaintiff approximately Seven Thousand Five Hundred Dollars ($7,500.00), quarterly, through August of 2029.

68. Defendant Schwab was the guarantor of the Elkhorn Promissory Note.

69. The parties later memorialized Plaintiff's investment in the Elkhorn Project via an "Operating Agreement" dated August 21, 2024, by and between Defendant SCWI and Plaintiff ("Elkhorn Agreement"). *A true and complete copies of the Elkhorn Operating Agreement is attached hereto as* **Exhibit D** *and incorporated by reference herein.*

70. Pursuant to the Elkhorn Agreement, Plaintiff was to receive a Ten (10%) Percent equity stake in Defendant SCWI.

71. Defendants did not own the Elkhorn assisted living and memory care facility located at 450 E. Geneva Street, Elkhorn, Wisconsin, 53121, but rather Defendants had an *option* to purchase the property under an undisclosed lease with the property owner.

72. Unbeknownst to Plaintiff, Defendants did not have a valid license to operate the Elkhorn facility and was therefore unable to collect any of the amounts due.

73. Instead, the property owner owned the operational license for the facility.

74. Based on Defendants' representations, the owner refused to turn over the income generated by the residents even though Defendants were purportedly managing the facility.

75. Plaintiff relied upon Defendant Schwab's representations that Defendants operated the assisted living and memory care facility located at 450 E. Geneva Street, Elkhorn, Wisconsin, 53121 when making its contribution into the Elkhorn Project.

76. On December 30, 2024, Defendants provided its 2024 Profit and Loss Statement which revealed a net operating income of $6,745.82 for 2024 – a $130,211.37 negative swing from the previously represented amount of $136,957.19.

**C. Missed Payments and Communication Breakdown.**

77. Defendants made two interest payments on the Notes.

78. Defendants missed payment deadlines, repeatedly made late payments; and eventually, ceased making any payments to Plaintiff.

79. Plaintiff has not received any payments from the Defendants since October 2024.

80. In spite of Plaintiff's repeated requests for clarification and transparency, Defendant Schwab continued to stall his responses to Plaintiff's various inquiries with respect to the nature of the investments.

81. Eventually, Defendant Schwab would respond with another excuse to only further delay his obligations due and owing to Plaintiff.

82. Defendant Schwab assured Plaintiff Reps, on multiple occasions, that the properties would be refinanced and then cash out the Plaintiff.

83. However, when the end of each passing quarter and week came, the properties still were not refinanced, and the Plaintiff's capital was not returned.

84. Now, Defendant Schwab claims the properties cannot be refinanced because interest rates are too high, so the terms are not good enough.

85. To date, Plaintiff has not received notice that the properties have been refinanced.

86. To date, Plaintiff's capital has not been returned.

87. Additionally, on or about October 4, 2024, the owner of the properties filed an eviction proceeding in Dane County, Wisconsin, Partners in Community Eldercare, LLC v. Shepherd Capital WI, LLC, Case No. 2024SC006678.

88. On or about March 31, 2025, Shepherd Capital WI, LLC filed an action against Partners in Community Eldercare, LLC in Dane County alleging breach of contract, Case No. 2025CV001012.

89. Upon information and belief, these two actions have since been consolidated.

90. In an April 9, 2025, email to the Plaintiff Reps, Defendant Schwab provided an update regarding the lawsuit.

91. In this update, Defendant Schwab wrote, "This is my **first-ever lawsuit**, and it's only because I'm not willing to let anyone jeopardize our mission or our investor capital." (emphasis in the original).

92. This statement is untrue as Defendant Schwab and his entities have been involved in several lawsuits that predate April 9, 2025, including:

a. *Bilello v. Schwab, et. al.*, Case No. 23-cv-02139, Northern District of Illinois – filed on or about April 5, 2023; and

b. *Igney v. Schwab, et. al*., Case No. 23-CV-16642, Northern District of Illinois – filed on or about December 11, 2023;

c. *Martin v. Shepherd Capital LLC et al*., 24-cv-50302, Northen District of Illinois – filed July 16, 2024.

d. *Momapes LLC v. Shepherd Capital LLC Harvard*, 24-cv-07951, Northen District of Illinois – filed August 30, 2024.

93. In fact, in just McHenry County, Illinois alone, Defendants have been involved in at least 27 lawsuits that predate April 9, 2025.

94. Defendant Schwab even filed for Chapter 7 bankruptcy on September 20, 2010.

95. Clearly, Defendant Schwab's statement that the Partners in Community Eldercare lawsuit was his "first-ever lawsuit" is untrue.

96. Defendants executed the Promissory Notes and Partnership Agreements with Plaintiff which contained false representations.

97. For example, the Defendants agreed to (a) make quarterly payments to Plaintiff until all principal, interest, and other charges were satisfied, (b) provide monthly accounting reports and statements for all partners, and (c) deliver immediate payment of all unpaid principal and interest which has not been paid after thirty (30) days' notice of default. Yet, (a) late charges have incurred due to the Defendants' delinquent quarterly agreed upon payments to Plaintiff, (b) Plaintiff has not received accounting reports or statements, and (c) Defendants failed to deliver immediate payment of all unpaid principal and interests following the Plaintiff's thirty (30) days' written notice of default.

98. Defendant Schwab represented that he was to use the invested funds raised and received from Plaintiff to purchase land, real estate, build, and refinance assisted living and memory care facilities, and even represented to Plaintiff profits to be generated by renting the properties out to various tenants.

99. However, the Defendants have failed to refinance any of the investment properties in either the Cottage Grove Project or the Elkhorn Project.

100. Defendants at no time provided Plaintiff with a Private Placement Memorandum, Subscription Agreement, risk disclosure, or other financial disclosures from any of the Defendants with respect to their investments.

101. Plaintiff was at no time ever vetted to be either an accredited or sophisticated investor.

102. Plaintiff provided materially different profit and loss statements before and after Plaintiff's investment into Defendant SCWI.

103. Plaintiff provided to the Defendants hundreds of thousands of dollars and did-in fact purchase unregistered securities offered by the Defendants.

104. As a direct and proximate cause of the Defendants' conduct described herein, Plaintiff has suffered and continues to suffer damages including, but not limited to economic damages, damage to reputation in the community, and ongoing damages.

105. Because of Defendants' conduct, Plaintiff has been forced to cover investor interest payments out of pocket after multiple missed payments.

106. Plaintiff caused the Notice of Default dated August 11, 2025, to be delivered to the Defendants advising them of their defaults and breaches which remain uncured.

107. By virtue of the foregoing conduct and as alleged further herein, the Defendants committed securities fraud, negligent misrepresentation, and breach of contract.

108. Unless the Defendants are restrained and enjoined, they will engage in the acts, practices, practices, transactions, and courses of business alleged forth in herein or in acts, practices, transactions, and courses of business of similar type and nature.

109. As a direct and proximate cause of the Defendants' conduct, Plaintiff has been required to retain the undersigned counsel and incur necessary legal fees and costs.

## COUNT I

## SELLING UNREGISTERED SECURITIES IN INTERSTATE COMMERCE IN VIOLATION OF SECTION 5(a) OF THE SECURITIES ACT OF 1933 (15 U.S.C. 77e(a)) (ALL DEFENDANTS)

110. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

111. From at least 2024 to date, Defendants, without registration statements in effect as to the securities, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities through the use or medium of any prospectus or otherwise.

112. Defendants' actions violate 15 U.S.C. § 77e(a).

113. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

114. Plaintiff has retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

## COUNT II

### FAILURE TO FILE NECESSARY REGISTRATION STATEMENT IN VIOLATION OF SECTION 5(c) of the SECURITIES ACT OF 1933 (15 U.S.C. § 77e(c)) (ALL DEFENDANTS)

115. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

116. From at least 2024 until to date, Defendants, without registration statements in effect as to the securities, directly or indirectly, made use of a means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell through the use or medium of any prospectus or otherwise any security.

117. Defendants' actions violate 15 U.S.C. § 77e(c).

118. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

119. Plaintiff has retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

## COUNT III

**SELLING A FRAUDULENT SECURITY IN VIOLATION OF 15 U.S.C. § 77l(a)**
**(ALL DEFENDANTS)**

120. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

121. From at least 2024 until to date, Defendants knowingly offered and sold securities by use of a means or instruments or transportation or communication in interstate commerce or of the mails, which contained untrue statements of material facts and omissions to state material facts necessary to make their statements not misleading.

122. Defendants' actions violate 15 U.S.C. § 77l(a).

123. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

124. Plaintiff has retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

## COUNT IV

**CONTROLLING AND SELLING A FRAUDULENT SECURITY IN VIOLATION OF 15 U.S.C. § 77o(a)**
**(DEFENDANT SCHWAB)**

125. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

126. From at least 2024 until to date, Defendant Schwab, knowingly and in connection with an agreement, controlled Defendant SC and Defendant SCWI, which offered and sold securities by use of a means or instrument of transportation or communication in interstate commerce or of the mails, which contained untrue statements of material facts and omissions to state material facts necessary to make their statements not misleading.

127. Defendant's actions violate 15 U.S.C. § 77o(a).

128. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

129. Plaintiff has retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

**COUNT V**

**FRAUD IN CONNECTION WITH THE PURCHASE AND SALE OF SECURITIES IN VIOLATION OF SECTIONS 10(b) [15 U.S.C. §78j(b)] AND RULE 10b-5(a) AND (c) [17 C.F.R. § 240.10b-5(a) AND (c)] OF THE SECURITIES EXCHANGE ACT OF 1934 (ALL DEFENDANTS)**

130. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

131. Defendants, by engaging in the conduct described above, directly or indirectly, by the use or means of instrumentalities of interstate commerce or use of the mails, in connection with the purchase and sale of securities, (a) made a misstatement or omission, (b) of material fact, (c) with scienter, (d) in connection with the purchase or sale of securities, (e) upon which the Plaintiff relied, and (f) that reliance proximately caused the Plaintiff's injuries.

132. Consequently, Defendants used, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange employed a scheme to defraud Plaintiff out of hundreds of thousands of dollars.

133. Defendant Schwab initially told Plaintiff Reps that the properties it was investing in would be refinanced and that the Plaintiff would receive the initial capital of the investments back upon refinancing.

134. Plaintiff made the investments under the assumption that it would receive the initial capital of the investments back with the option to reinvest.

135. Refinancing on the invested properties did not and has yet to occur.

136. Plaintiff has not received the initial capital back that they invested.

137. Defendants have, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, engaged in acts which operate as a fraud or deceit upon Plaintiff.

138. Defendants' actions violate Sections 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c) of the Securities Act of 1934.

139. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

140. Plaintiff has retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

## COUNT VI

### FRAUD IN CONNECTION WITH THE PURCHASE AND SALE OF SECURITIES IN VIOLATION OF ILL. REV. STAT. 1979, CH. 121 1/2, PAR. 262, SECTION 2 OF THE CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (DEFENDANT SCHWAB)

141. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

142. Defendants, by engaging in the conduct described above, directly or indirectly, used deceptive acts or practices, including by not limited to the use or employment of any deception fraud, false pretenses, false promises, misrepresentations or concealments, suppressions or omissions of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, and Plaintiff has been misled, deceived, and damaged as a result.

143. Defendant Schwab committed fraudulent acts when he convinced the Plaintiff to purchase securities under the assumption the properties would be refinanced, and that the Plaintiff's initial capital would be returned with interest promptly.

144. Defendant Schwab's actions violate Ill. Rev. Stat. 1979, Ch. 121 1/2, par. 262 of Section 2 of the Consumer Fraud and Deceptive Business Practices Act.

145. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

146. Plaintiff has retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

## COUNT VII

### NEGLIGENT MISREPRESENTATION
### (ALL DEFENDANTS)

147. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

148. Defendants negligently misrepresented their intended use of Plaintiff's funds; the proposed refinancing of the investment properties; and their credentials.

149. Defendants negligently misrepresented their ownership of the Cottage Grove and Elkhorn projects as the original pitch slides furnished by Defendants indicated that the facilities were purchased for $1,500,000 each in December 2023 even though Defendants leased the property with an option to purchase it for $6,000,000.

150. Defendants negligently misrepresented the census and financials of the Cottage Groe and Elkhorn facilities.

151. Defendants made negligent misrepresentations and should have known their representations were false due to their failure to make payments owed to Plaintiff; their failure to

take proactive steps in securing the refinancing of the investment properties; their failure to register with either the SEC or the State of Illinois; and their lack of ownership in the assisted living and memory care facilities.

152. Defendants intended to induce Plaintiff to act based upon their misrepresentations for which Plaintiff did in-fact act by investing with the Defendants.

153. As a direct and proximate cause of the Defendants' conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

154. Plaintiff has retained the undersigned counsel for the purposes of pursuing this matter against the Defendants.

**COUNT VIII**

**SELLING UNREGISTERED SECURITIES IN VIOLATION OF CH. 121 ½, PAR. 137.5 OF THE ILLINOIS SECURITIES LAW OF 1953 (ALL DEFENDANTS)**

155. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

156. From 2024 to date, Defendants offered and sold unexempt securities in the State of Illinois not subject to any security exemption.

157. Defendants' actions violate Ch. 121 1/2, par. 137.5 of the Illinois Security Law of 1953.

158. As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

159. Plaintiff has retained the undersigned counsel for the purposes of pursuing this matter against the Defendants.

## COUNT IX

### SELLING SECURITIES AS AN UNREGISTERED BROKER-DEALER IN VIOLATION OF SECTION 2a OF THE ILLINOIS SECURITIES LAW OF 1953 (ALL DEFENDANTS)

160. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

161. From 2024 to date, Defendants transacted business selling unregistered securities as unregistered broker-dealers in the State of Illinois.

162. Defendants' actions violate Section 2a of the Illinois Securities Law of 1953.

163. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

164. Plaintiff has retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

## COUNT X

### SELLING A FRADULENT SECURITY IN VIOLATION OF SECTION 12(G) OF THE ILLINOIS SECURITIES LAW OF 1953 (ALL DEFENDANTS)

165. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

166. From 2024 to date, Defendants offered and sold securities in writing which contained untrue statements of material facts and omissions to state material facts necessary to make their statements not misleading.

167. Defendants' actions violate Section 12(G) of the Illinois Securities Law of 1953.

168. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

169. Plaintiff has retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

**COUNT XI**

**BREACH OF CONTRACT**
**(DEFENDANT SCWI)**

170. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

171. Defendants offered Plaintiff equity in Defendant in exchange for a capital investment.

172. Defendants entered into and executed valid Operating Agreements for the benefit of Plaintiff. See Exhibits B and D.

173. Plaintiff provided to Defendants valuable consideration in exchange for equity in Defendant SCWI.

174. Plaintiff satisfied all conditions precedent under the Operating Agreement.

175. In violation of Article 5.01 of the Operating Agreements, Defendants failed to provide Plaintiff with monthly accounting reports and statements.

176. In violation of Article 9..09 of the Operating Agreements, Defendants failed to prepare and timely file all tax returns.

177. Defendants have failed to even provide the appropriate tax documents so that Plaintiff can finalize its taxes.

178. The Defendants' conduct amounts to a material breach under the Operating Agreement.

179. As a result of the Defendants' conduct, the Plaintiff's obligations to perform under the Operating Agreement are excused.

180. As a direct and proximate cause of the Defendants' conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

181. Plaintiff has retained the undersigned counsel for the purpose of pursuing this matter against the Defendants.

## COUNT XII

### BREACH OF PROMISSORY NOTE – COTTAGE GROVE (DEFENDANT SCWI)

182. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

183. On or about August 5, 2024, Defendant SCWI executed the valid and enforceable Cottage Grove Note with Plaintiff in the principal amount of Four Hundred Thousand Dollars ($400,000.00).

184. Plaintiff provided to Defendant valuable consideration in exchange for the Cottage Grove Note.

185. Plaintiff satisfied all conditions under the Cottage Grove Note.

186. The Cottage Grove Note provides that it shall be repaid at the rate of ten percent per annum (10%) as follows:

"(E) Interest Payment Schedule:

- **Year 1 – August 5th, 2025- $40,000 ( Paid $10,000 quarterly )**
- **Year 2 – August 5th, 2026- $40,000 ( Paid $10,000 quarterly )**
- **Year 3 – August 5th, 2027- $40,000 ( Paid $10,000 quarterly )**
- **Year 4 – August 5th, 2028- $40,000 ( Paid $10,000 quarterly )**
- **Year 5 – August 5th, 2029- $40,000 ( Paid $10,000 quarterly )**

All interest paid by the 15th of the close of a quarter, for example Quarter 1 interest will be paid on April 15th."

187. Defendant failed to pay its quarterly payments due under the Cottage Grove Note in Quarter 4 of 2024 and Quarter 2 of 2025.

188. Defendant's failure to make the required quarterly payments on time constituted an event of default under the terms of the Cottage Grove Note.

189. In violation of Paragraph 1 of the Cottage Grove Note, Defendant failed to pay Plaintiff all principal and interest due under the Cottage Grove Note until the Cottage Grove Note was paid in full.

190. In violation of Paragraph 6(A) of the Cottage Grove Note, Defendant failed to pay late charges incurred for overdue quarterly payments not received within ten (10) days of the monthly payment becoming due.

191. Under the terms of the Cottage Grove Note, Defendant's default allows Plaintiff to, after providing thirty days' notice to Defendant, accelerate and demand immediate payment of the principal, unpaid interest and all other accrued charges.

192. On August 11, 2025, Plaintiff provided notice to Defendant of Defendant's default and declared its intentions to accelerate and demand immediate payment of the principal, unpaid interest and all other accrued charges.

193. Plaintiff has accelerated and made demand upon Defendant for the immediate payment of the principal, unpaid interest and all other accrued charges A true and correct copy of the Notice of Acceleration and Demand for Payment dated September 11, 2025, is attached as **Exhibit E** and incorporated herein by reference

194. Although demand was made upon Defendant, Defendant has failed and refused to pay the outstanding balance or any portion thereof.

195. In violation of Paragraph 6(C) of the Cottage Grove Note, Defendant failed to pay the full amount of principal which had not been paid, interest on the amount owed, or late charges incurred following thirty (30) days' notice of their default.

196. The Defendant's conduct amounts to a material breach under the Cottage Grove Note.

197. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

198. As of August 11, 2025, the outstanding and unpaid principal and interest was Four Hundred Twenty Two Thousand Dollars ($422,000.00).

199. The Cottage Grove Note carries interest at a rate of 10% per annum.

200. The Cottage Grove Note, Paragraph 6(E), allows Plaintiff to recover reasonable attorney fees and collection costs from having to file a civil action to collect amounts owed from Defendant under the note.

201. Plaintiff remains the owner and holder of the Cottage Grove Note and the party to whom payment is due under the Cottage Grove Note. Plaintiff is entitled to enforce the terms of the note against Defendant.

202. Defendant Schwab personally guaranteed the payment of the Cottage Grove Note.

## COUNT XIII

### BREACH OF PROMISSORY NOTE - ELKHORN (DEFENDANT SCWI)

203. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

204. On or about August 9, 2024, Defendant SCWI executed the valid and enforceable Elkhorn Note with Plaintiff in the principal amount of Three Hundred Thousand Dollars ($300,000.00).

205. Plaintiff provided to Defendant valuable consideration in exchange for the Elkhorn Note.

206. Plaintiff satisfied all conditions under the Elkhorn Note.

207. The Elkhorn Note provides that it shall be repaid at the rate of ten percent per annum (10%) as follows:

"(E) Interest Payment Schedule:

- **Year 1 – August 9th, 2025- $30,000 ( Paid $7,500 quarterly )**
- **Year 2 – August 9th, 2026- $30,000 ( Paid $7,500 quarterly )**
- **Year 3 – August 9th, 2027- $30,000 ( Paid $7,500 quarterly )**
- **Year 4 – August 9th, 2028- $30,000 ( Paid $7,500 quarterly )**
- **Year 5 – August 9th, 2029- $30,000 ( Paid $7,500 quarterly )**

All interest paid by the 15th of the close of a quarter, for example Quarter 1 interest will be paid on April 15th."

208. Defendant failed to pay its quarterly payments due under the Elkhorn Note in Quarter 4 of 2024 and Quarter 2 of 2025.

209. Defendant's failure to make the required quarterly payments on time constituted an event of default under the terms of the Elkhorn Note.

210. In violation of Paragraph 1 of the Elkhorn Note, Defendants failed to pay Plaintiff all principal and interest due under the Elkhorn Note until the Elkhorn Note was paid in full.

211. In violation of Paragraph 6(A) of the Elkhorn Note, Defendants failed to pay late charges incurred for overdue monthly payments not received within ten (10) days of the quarterly payments becoming due.

212. Under the terms of the Elkhorn Note, Defendant's default allows Plaintiff to, after providing thirty days' notice to Defendant, accelerate and demand immediate payment of the principal, unpaid interest and all other accrued charges.

213. On August 11, 2025, Plaintiff provided notice to Defendant of Defendant's default and declared its intentions to accelerate and demand immediate payment of the principal, unpaid interest and all other accrued charges.

214. Plaintiff has accelerated and made demand upon Defendant for the immediate payment of the principal, unpaid interest and all other accrued charges See **Exhibit E**.

215. Although demand was made upon Defendant, Defendant has failed and refused to pay the outstanding balance or any portion thereof.

216. In violation of Paragraph 6(C) of the Elkhorn Note, Defendant failed to pay the full amount of principal which had not been paid, interest on the amount owed, or late charges incurred following thirty (30) days' notice of their default.

217. The Defendant's conduct amounts to a material breach under the Elkhorn Note.

218. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

219. As of August 11, 2025, the outstanding and unpaid principal and interest was Three Hundred Seventeen Thousand Dollars ($317,000.00).

220. The Elkhorn Note carries interest at a rate of 10% per annum.

221. The Elkhorn Note, Paragraph 6(E), allows Plaintiff to recover reasonable attorney fees and collection costs from having to file a civil action to collect amounts owed from Defendant under the note.

222. Plaintiff remains the owner and holder of the Elkhorn Note and the party to whom payment is due under the note. Plaintiff is entitled to enforce the terms of the note against Defendant.

223. Defendant Schwab personally guaranteed the payment of the Elkhorn Note.

## COUNT XIV

### BREACH OF PERSONAL GUARENTEE – COTTAGE GROVE (DEFENDANT SCHWAB)

224. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

225. Defendant Schwab personally guaranteed the payment of the Cottage Grove Note.

226. In the Cottage Grove Note, Defendant Schwab absolutely and unconditionally guaranteed the full and prompt payment of all the obligations of Cottage Grove Note, together with all interest thereon and all costs, expenses and reasonable attorneys' fees incurred by Plaintiff in the enforcement of the note and guaranty.

227. Defendants defaulted on the Cottage Grove Note by missing the Quarter 4 2024 and Quarter 2 2025 payments.

228. Defendants were notified of their default numerous times, most recently on August 11, 2025.

229. As of August 11, 2025, the outstanding and unpaid principal and interest on the Cottage Grove Note was Four Hundred Twenty Two Thousand Dollars ($422,000.00).

230. Demand for payment was made and ignored by Defendants.

231. Defendant Schwab has materially breached his obligations to guarantee payment of the Cottage Grove Note.

232. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

**COUNT XV**

**BREACH OF PERSONAL GUARENTEE - ELKHORN**
**(DEFENDANT SCHWAB)**

233. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

234. Defendant Schwab personally guaranteed the payment of the Elkhorn Note.

235. In the Cottage Grove Note, Defendant Schwab absolutely and unconditionally guaranteed the full and prompt payment of all the obligations of Elkhorn Note, together with all interest thereon and all costs, expenses and reasonable attorneys' fees incurred by Plaintiff in the enforcement of the note and guaranty.

236. Defendants defaulted on the Elkhorn Note by missing the Quarter 4 2024 and Quarter 2 2025 payments.

237. Defendants were notified of their default numerous times, most recently on August 11, 2025.

238. As of August 11, 2025, the outstanding and unpaid principal and interest on the Elkhorn Note was Three Hundred Seventeen Thousand Dollars ($317,000.00).

239. Demand for payment was made and ignored by Defendants.

240. Defendant Schwab has materially breached his obligations to guarantee payment of the Elkhorn Note.

241. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and will continue to suffer actual, material, and ongoing damages.

## COUNT XVI

### FAILURE TO ALLOW EXAMINATION OF CORPORATE RECORDS IN VIOLATION OF 805 ILCS 180/10-15 (DEFENDANTS SCWI AND SCHWAB)

242. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

243. On or about September 15, 2025, Plaintiff, through counsel, sent a written demand letter to Defendant SCWI and Schwab requesting that Defendants and its directors, officers, and agents make available to Plaintiff, at Defendants' principal place of business, various corporate books and records. A true and correct copy of said written demand letter, which states with particularity the records sought to be examined and the purpose therefore, is attached hereto as **Exhibit F** and incorporated by reference herein.

244. Plaintiff's purpose for requesting said corporate books and records, as set forth in the written demand, are proper purposes.

245. Defendants have failed and refused and continue to fail and refuse to allow Plaintiff to examine and make extracts of the requested books and records.

246. As a result of Defendants' failure and refusal to allow Plaintiff to examine the requested records, Defendants are liable to pay a penalty to Plaintiff in the amount of up to 10% of the value of any shares owned by Plaintiff.

247. As a result of Defendants' failure and refusal to allow Plaintiff to examine the requested records, Plaintiff has suffered damages for which Defendants are liable in addition to the penalty described above.

## COUNT XVII

### JUDICIAL DISSOLUTION PURSUANT TO 805 ILCS 180/35-1
### (Defendant SCWI)

248. Plaintiff incorporates by reference each and every allegation contained in the preceding Paragraphs as if specifically set forth herein.

249. Subsection (a)(4) of 805 ILCS 180/35-1 provides that the Court may dissolve a limited liability company in a proceeding commenced by a member when the economic purpose of the company has been or is likely to be reasonably frustrated, the conduct of all or substantially all of the company's activities is unlawful, or it is not otherwise reasonably practicable to carry on the company's business in conformity with the articles of organization and the operating agreement.

250. Subsection (a)(5) of 805 ILCS 180/35-1 provides that the Court may dissolve a limited liability company in a proceeding commenced by a member when the managers or those members in control of the company (A) have acted, are acting, or will act in a manner that is illegal or fraudulent; or (B) have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to Plaintiff.

251. Plaintiff signed two Operating Agreements relating to Defendant SCWI – one for the Cottage Grove project and another for the Elkhorn project.

252. Both Operating Agreements reference capital contributions - $400,000 for Cottage Grove and $300,000 for Elkhorn – that each provided Plaintiff a 10% equity stake in Defendant SCWI.

253. In addition to the actions and conduct previously alleged, from the date of Plaintiff acquiring its membership units and continuing through the present:

a. Defendant has refused to establish quarterly meetings as mandated by the Operating Agreement;

b. Defendant has not declared any distributions or provided any other remuneration to Plaintiff;

c. Defendant has failed and refused to produce records properly requested by Plaintiff pursuant to statute;

d. Defendant has failed to provide Plaintiff relevant tax forms for its tax obligations;

e. As of November 5, 2025, Defendant was not in good standing with the State of Illinois; and

f. Defendant has engaged in other conduct that is arbitrary, overbearing, heavy-handed, or otherwise oppressive.

254. Accordingly, Defendant's directors or those in control of the corporation, including Defendant Schwab, have acted and are acting in a manner that is oppressive with respect to Plaintiff.

255. Further, upon information and belief, Defendant's assets are being misapplied or wasted.

256. Defendant's actions were and are in wanton disregard of the rights of Plaintiff.

257. As a result of the wrongful conduct alleged, Plaintiff has suffered damages.

258. Judicial Dissolution of Defendant SCWI is the only feasible means to terminate the parties' interest without harming Defendant SCWI.

259. Judicial dissolution is reasonably necessary to protect the rights and interests of Plaintiff and Defendant SCWI.

260. Judicial dissolution is therefore warranted and required pursuant to 805 ILCS 180/35-1, including appointment of a receiver and/or custodian, and/or liquidation of Defendant SCWI's assets.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the Defendants and grant the following relief:

A. Find that the Defendants violated the registration provisions of the federal securities laws as alleged herein;

B. Issue a permanent injunction enjoining Defendants from violating Sections 5, 12, and 15 of the Securities Act of 1933 [15 U.S.C. §§ 77e(a), 77e(c), 77l(a), and 77o], Section 10b [15 U.S.C. § 78j(b), Rule 10b-5(a) and (c) [17 C.F.R. § 240.10b-5(a) and (c)] of the Securities Exchange Act of 1934, 815 ILCS 505/1, ch. 121 1/2, par. 137.5, and Section 2a, of the Illinois Securities Law of 1953, 805 ILCS 180/10-15, and breach of contract;

C. Find that the Defendants violated the registration provisions of the State of Illinois as alleged herein;

D. Order Defendant to return all consideration received under the same;

E. Order the Defendants to disgorge all gains and to pay prejudgment interest thereon;

F. Judicially dissolve Defendant SCWI, appoint a receiver and/or custodian, and/or liquidate Defendant SCWI's assets;

G. Award to Plaintiff their compensatory damages;

H. Award to Plaintiff their statutory damages;

I. Award to Plaintiff their attorneys' fees and costs incurred in bringing of this action;

J. For pre-judgment interest at 10% per annum and for post-judgment interest at the highest rate allowable by law; and

K. Compelling defendants to produce the requested books and records and awarding Plaintiff a penalty in the amount of 10% of the value of the Defendant SCWI's units owned by Plaintiff

L. Award to Plaintiff such other and further relief as is just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all issues triable by jury.

Respectfully submitted,

OPEN RANGE CAPITAL FUND 1 LLC

Dated: November 12, 2025

By: *_/s/ Laura Newcomer Cohen_*_

Laura Newcomer Cohen (ARDC #6302639)
Jennifer M. Hanna (ARDC #6277600)
ESBROOK P.C.
321 N. Clark St., Suite 1930
Chicago, Illinois 60654
(312) 242-3128
laura.cohen@esbrook.com
jenn.hanna@esbrook.com

*Counsel for Plaintiff*